## Espy's Estate.

*Will—Legacies—Charge on real estate—Omission of residuary clause.*

Where a testator leaves personal estate supposed to be equal to money legacies in his will, and also real estate, but makes no reference to the real estate in his will, except as to one property which his wife is to occupy, and the will contains no residuary clause, the rule that the heir is not to be disinherited prevails over the presumption against intestacy, and the court will not order a sale of the real estate to pay legacies failing through deficiency of personal assets.

Argued Oct. 22, 1903. Appeal, No. 126, Oct. T., 1903, by Sarah Agnes Espy, from decree of O. C., Washington Co., Feb. T., 1903, No. 66, dismissing petition to sell real estate in estate of James Espy, deceased. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Petition to sell real estate.

Demurrer to petition.

TAYLOR, P. J., found the facts to be as follows:

The decedent died in June, 1883. The following was probated as his last will and testament.

" In the name of God amen, I James Espy of Canonsburg. Washington County Pa. Being in usual health and sound mind and considering the uncertainty of life do make and declare this my last will and testament in manner as follows, to-wit:

" First, I commend my soul to God who gave it, and my body to the ground from whence it was taken.

" I will that all my just debts be fully paid,

" I give and bequeath to my beloved wife the use of the

house and lot where we now live during her natural life. Also the furniture and everything in the house not hereinafter disposed of, also my horse, buggy and harness, also all the yearly income from money at interest mortgages or otherwise, during her life, (after my debts and funeral expenses are paid) for her support, and my two daughters while they remain single.

"I give and bequeath to my son Jesse S. Espy four thousand dollars, to be paid one year after his mother death.

"I give and bequeath to my son James T. Espy four thousand dollars, to be paid one year after his mothers death, the five hundred dollar note which I hold on him to be counted but no interest to be counted on it.

"I give and bequeath to my daughter Eliza Jane one thousand dollars.

"I bequeath to my daughter Emma one thousand dollars.

"I give to my daughter Maggie M. twelve hundred dollars.

"I give to my daughter Laura B. W. fifteen hundred dollars.

"I bequeath to the board of Foreign Missions five hundred dollars.

"I bequeath to the board of Home Missions five hundred dollars.

"The above legacies not to be due nor paid till one year after my wife's death.

"I give to my grandson James I. Espy my silver watch.

"I hereby appoint my son Jesse and Moses Hickman my executors of this my last will.

"In witness whereof I have hereunto set my hand and seal this thirteenth day of September A. D. 1877.

"JAMES ESPY.   [Seal]

"Witnesses:
    "Wm. B. STEWART,
    "W. R. McCONNELL."

Probated July 3, 1883 and letters testamentary issued of Jesse Espy and Moses Hickman.

On this will letters testamentary were issued to the executors named in the will. Jesse S. Espy, one of the executors of said will has since died having first made his last will and testament, leaving as his residuary legatee his wife Sarah A. Espy, one of

the petitioners for citation. Moses Hickman is now the sole surviving executor of the will of James Espy, deceased.

The said James Espy left to survive him the following persons named in said will: Susan Espy, his wife, now deceased, and the following children: Jesse S. Espy, now deceased, leaving as his heir and devisee one of the petitioners Sarah Agnes Espy; James T. Espy; Eliza Jane, deceased, wife of Moses Hickman, leaving to survive her her said husband and two daughters, viz: Blanche Boon, wife of George Boon, and Effie Simpson, wife of Wm. Simpson; Emma McCabe, wife of Joseph McCabe; Maggie Craighead, wife of Marshall Craighead; and Laura B. W. Bebout, wife of J. C. Bebout. Susan Espy, wife of testator, died on or about December 26, 1901, and under the terms of decedent's will all legacies bequeathed therein are now due and payable.

The real estate of which the decedent died seized, as stated in the petition for citation, consisted of a house and lot in the borough of Canonsburg, Pa., containing forty-one and nine tenths perches and an undividedone half interest in a tract of eighty-six acres, forty and one fifth perches situate in Bethel township, Allegheny county, Pa.

No inventory and appraisement can be found on file of the personal estate of said decedent but in the account of Moses Hickman, the sole surviving executor of said will, filed on April 13, 1903, the accountant charges himself in the first instance, "to amount of inventory filed August 1, 1883, $12,719." Various items of increase by way of gains on Iron Mill stock, railroad stock, interest on moneys and bank stock swell the inventory with which the accountant charges himself to $15,805.82. By taking credits for various items and a credit "By error in appraisement of Van Eman mortgage $6,953.44," the balance shown by the account for distribution among legatees named in the will is $5,763.65.

The total amount of legacies bequeathed by said will deducting the sum of $500, from the legacy of $4,000, to James T. Espy is $13,200. It will be noted that testator does not make any of these legacies payable until one year after his wife's death. He died in 1883 and his wife died December 26, 1901. It is now claimed by the petitioners Sarah Agnes Espy and James T. Espy legatees of $4,000 each, Sarah Agnes Espy

being the sole devise and legatee of her husband Jesse S. Espy, deceased, that the personal estate of James Espy, deceased one year after the decease of his widow by the account filed is not sufficient to pay their legacies and the deficiency as shown by a distributive schedule to said account, is chargeable upon and payable out of the proceeds of the sale of any real estate of which the said James Espy died seized. This is the sole question for determination by the court raised by the petitions for citation and demurrer filed to whole of said petition on behalf of Moses Hickman, surviving husband of Eliza Jane (Espy) Hickman, Blanche (Hickman) Boon, Effie (Hickman) Simpson, Emma (Espy) McCabe, Maggie (Espy) Craighead and Laura B. W. (Espy) Bebout, denying that said legacies, or any part thereof, are chargeable upon or payable out of the proceeds of the sale of the land of which said decedent died seized, as above described.

The court citing Schmidth's Est., 183 Pa. 641; Weidman's App., 42 Legal Int. 338; Hancock's App., 112 Pa. 532; Duvall's Est., 146 Pa. 176; Okeson's App., 59 Pa. 99; Cable's App., 91 Pa. 327, dismissed the petition.

*Error assigned* was in dismissing the petition.

*W. M. Craft*, for appellant.—Prima facie a general legacy is payable out of the residuary estate, real and personal.

An heir at law and a residuary legatee stands in precisely the same position, and neither can take so long as there are general legacies remaining unsatisfied : Riley's Appeal, 34 Pa. 291; McGlaughlin v. McGlaughlin, 24 Pa. 20, 23.

A charge will be implied, if the language of the will indicates that the testator intended the legacies to be paid, knowing that his personal estate would be insufficient for that purpose : Duncan v. Wallace, 114 Ind. 169 (16 N. E. Repr. 137) ; Davidson v. Coon, 9 L. R. A. 584; Linnard's Estate, 24 W. N. 492.

We must start out with the fact that there is no presumption in favor of a partial intestacy : Reimer's Estate, 159 Pa. 212.

So strong is the presumption against partial intestacy, that it is a well and long settled rule that a will must be so construed as to avoid partial intestacy unless the contrary be un-

avoidable :   Boards of Missions' App., 91 Pa. 513 ; Scofield v. Olcott, 120 Ill. 362 (11 N. E. Repr. 351).

*T. F. Birch,* for appellees.—There is no sufficient indication of any intent of the testator, discoverable in his will, that the legatees should have any advantage over their coheirs other than the discrimination made in their favor by the amounts of the legacies payable out of the personal property.   It is rather to be believed that the testator intended that his personal property should be payable in those sums, and with those differences, and that the real estate should descend to all of his children, share and share alike.   A full discussion of the principle involved in this part of the contention is found in Walters' Estate, 11 Pa. Superior Ct. 303, and, supporting that, very strong cases in favor of our contention that these legacies are not charged on any real estate, are Duvall's Appeal, 146 Pa. 176 ; Dickerman v. Eddinger, 168 Pa. 246 ; and Cable's Appeal, 91 Pa. 327. All of these cases are collected, explained, followed and confirmed by Chief Justice STERRETT on Mitchell's Estate, 182 Pa. 530.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904 :

We think the learned judge of the orphans' court properly disposed of the question involved in this case and that the appeal should be dismissed.   His position is fully sustained by the authorities he cites.

It is well settled that unless a testator charges a legacy upon his real estate, his personal estate is the primary and only fund out of which it can be paid.   It is conceded here that the testator did not expressly charge the legacy of the appellant's decedent on his real estate, but it is claimed that, by a proper construction of the entire will, there is a clear implication that he intended to do so.   As the trial judge observes, we think there is nothing to justify this conclusion.   The legal presumption that the testator did not intend to die intestate is fully met and satisfactorily answered by another presumption of like force and effect, that the heir is never to be disinherited except by plain words or necessary implication : Schmidth's Estate, 183 Pa. 641. Here, if the position of the appellant be correct and we construe this will as showing it to be the intention of the testator to

have his real estate applied to the payment of the legacy, the heirs are disinherited and deprived of any part of their ancestor's estate. There are no "plain words and necessary implication" arising from the language of the instrument demanding an interpretation which would produce such a result.

The legacies were not to be paid until after the death of the testator's wife. The amount of the inventory of his personal estate was about equal to the total amount of the legacies. The assets were productive and it is manifest that he believed that the income from them would, in addition to the use of his homestead, be sufficient for the support of his wife and daughters, and that the principal would be adequate to pay all the legacies. This is not a case in which the testator had no personal estate, which is regarded as a circumstance tending to show his intention to charge his real estate with the payment of legacies; but simply one where the testator overestimates the probable value of his personal estate at the time it is required to be applied in satisfaction of the legacies.

The omission of a residuary clause when considered in connection with the language of this will and the extrinsic facts, cannot be regarded as of very much importance in ascertaining the intention of the testator as to what part of his estate should be applied to the payment of the legacies. The omission may have been a mere inadvertence or it may have been intentional on the part of the testator. But be that as it may, had he intended to make his real, as well as his personal, estate subject to the payment of the legacies, he could easily have so declared or have added a residuary clause which would have accomplished the purpose. On this branch of the case we may appropriately conclude by quoting from the opinion of Mr. Justice GREEN in Schmidth's Estate, supra: "The omission of a residuary clause in wills is not by any means an uncommon occurrence. But because of such omission it is neither necessary nor proper to give the residue to some specific legatee upon a forced construction of words which do not indicate such a purpose in the mind of the testator. In all such cases the testator is simply intestate as to the residuary estate, and it must then be distributed according to the intestate laws."

We discover no error in this record which would warrant us in reversing the court below and hence, the decree is affirmed.